***********
The undersigned have reviewed the prior Decision and Order based upon the record of the proceedings before Deputy Commissioner Houser. The appealing party has not shown good grounds to reconsider the evidence, receive further evidence, rehear the parties or their representatives, or amend the Decision and Order except for minor modifications; therefore, the Full Commission AFFIRMS the Decision and Order of the Deputy Commissioner.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties in a Pre-Trial Agreement and at the hearing before the Deputy Commissioner as:
 STIPULATIONS
1. All parties are properly before the Commission, which has jurisdiction over the parties and the subject matter.
2. All parties are correctly designated and there is no question as to the misjoinder or nonjoinder of parties.
3. The date of the injury in this case is March 21, 1998.
4. Defendant is responsible for the repair and maintenance of Interstate 77 in Surry County.
5. Plaintiff Evelyn Kline's damages are at least $500,000.00.
6. The medical records and bills for plaintiff Evelyn Kline are reasonably related to the injuries she sustained in the motor vehicle accident which occurred on March 21, 1998 on Interstate 77 in Surry County. Defendant stipulated and agreed that each of the bills and records for Evelyn Kline are genuine and authentic and may be received into evidence without further identification or proof.
7. The medical bills and records for plaintiff Harrison Kline are reasonably related to the injuries he sustained in the motor vehicle accident which occurred on March 21, 1998 in on Interstate 77 in Surry County. Defendant stipulated and agreed that each of the bills and records for Harrison Kline are genuine and authentic and may be received into evidence without further identification or proof.
8. During the deputy commissioner hearing, the parties agreed to stipulate that the amount of plaintiff Harrison Kline's related medical bills is $7,577.91. Additionally, the parties stipulated that plaintiff Harrison Kline sustained lost wages as a result of his injuries, and other damages. Plaintiff Harrison Kline's stipulated lost wages are $6,637.50, which consists of 118 days missed from work at a rate of $7.50 per hour based on a 7.5 hour work day.
9. At the deputy commissioner hearing, the parties submitted the following:
 a. Medical Records and Bills for plaintiff Evelyn Kline, which were admitted into the record, and collectively marked as Stipulated Exhibit (2);
 b. Medical Records and Bills for plaintiff Harrison Kline, which were admitted into the record, and collectively marked as Stipulated Exhibit (3);
 c. Department of Transportation photographs of plaintiffs' vehicle, which were admitted into the record, and marked as Stipulated Exhibits (4(a)-(r));
 d. Department of Transportation Photographs of the Road Surface in Question, which were admitted into the record, and marked as Stipulated Exhibits (5(a)-(q)), and;
 e. A May 18, 1999 correspondence regarding plaintiff Harrison Kline's lost wages, which were admitted into the record, and marked as Stipulated Exhibit (6).
 ***********
Based upon the evidence of record and the findings of fact found by the Deputy Commissioner, the Full Commission finds as follows:
 FINDINGS OF FACT
1. At approximately 7:25 a.m. on March 21, 1998, plaintiffs were traveling south on Interstate 77 in Surry County from their home in Westerville, Ohio to Florida. Interstate 77 is a four-lane divided highway, with a grass median in the center, and paved shoulders. Plaintiff's vehicle was a leased car, a 1997 Toyota Camry. On that date, the weather conditions were sunny and clear.
2. At the time in question, plaintiffs had been traveling for less than one hour, having spent the preceding night in a motel near the North Carolina-Virginia state line. Plaintiff Harrison Kline was driving the vehicle, while plaintiff Evelyn Kline was sleeping in the front passenger seat. Plaintiff Harrison Kline was operating his vehicle in the right-hand lane of Interstate 77 at a speed no more than the posted speed limit of seventy miles per hour.
3. Traveling southbound, plaintiffs entered North Carolina at milepost 105.6. The next approximately seven miles of road surface was rough, cracked, and patched concrete pavement. From milepost 99 to milepost 95, plaintiffs traveled four miles on a smoother, permanent asphalt surface which had been placed over the concrete. The next four miles of road surface was again rough, cracked, and patched, concrete pavement. From milepost 91 to 87, the road surface plaintiffs were traveling on returned to a smoother permanent asphalt surface which had been placed over the concrete. At milepost 87, just north of the accident site, plaintiffs resumed travel on the rough, cracked, patched concrete pavement. The changes back and forth between road surfaces were clearly visible, and were observed by plaintiff Harrison Kline according to his testimony.
4. After passing milepost 87, as plaintiffs approached a bridge on Interstate 77 which crosses the Mitchell River, plaintiff Harrison Kline observed an object in the road. The site of the collision with the object in the road was two-hundred and thirty-three (233) feet after plaintiffs resumed travel on the rougher, concrete road surface. According to the testimony of defendant's employee, Mr. Mark Freeman, the distance at which objects were visible driving towards the accident scene from the north was more than five-hundred (500) feet. However, when he first observed the object, plaintiff Harrison Kline was unable to determine precisely what it was, because the object was the same color as the road surface. According to his testimony, upon observing the object, plaintiff Harrison Kline prepared to move his vehicle into the left-hand, southbound lane to avoid it, and maneuvered his vehicle slightly to the left. However, because of the presence of another vehicle which was in the left-hand, south bound lane, plaintiff Harrison Kline was unable to change lanes. By this time, plaintiff Harrison Kline determined that the only evasive type action he could take was to slow down, and attempt to straddle the object with his vehicle.
5. Because the object in the road exceeded the road clearance of plaintiffs' vehicle, despite plaintiff Harrison Kline's attempt to straddle it, plaintiffs' vehicle struck the object. As a result of the impact with object, the rear end of plaintiffs' vehicle was propelled into the air, causing plaintiff Harrison Kline to lose control of the vehicle. Plaintiffs' vehicle then traveled off the left side of the highway, striking the guardrail. After striking the left side guardrail, plaintiffs' vehicle traveled across Interstate 77, and struck a concrete bridge railing located on the opposite side of the highway.
6. Subsequent to the accident, it was determined that the object in question was a large piece of concrete that had broken loose from the road surface of Interstate 77. The concrete piece was introduced in evidence, and consisted of concrete, and steel rebar approximately 14"x18"x10". A photograph of the piece of concrete was introduced as Exhibit 101, and the parties agreed that the Kline vehicle struck this piece of concrete. The concrete piece was removed by defendant from the accident site, and maintained at its Surry County office.
7. The Full Commission accepts plaintiff Harrison Kline's testimony regarding the manner in which the accident occurred as credible. Plaintiff Harrison Kline's testimony was also corroborated by the testimony of Mr. David Shortt, Mr. Randy Shortt, and Mr. Eric Sturgill. Mr. David Shortt was operating a pickup truck in the right-hand, southbound lane of Interstate 77 on March 21, 1998. The Shortts and Mr. Sturgill had been following plaintiffs' vehicle for several minutes prior to the accident. Mr. Randy Shortt was sitting in the front passenger seat of the truck, with Mr. Sturgill in the middle. According to the testimony of the Shortts, prior to the accident, plaintiff Harrison Kline appeared to be operating his vehicle in a normal manner. The Shortts also testified that in their estimation, plaintiffs' vehicle was traveling at a speed of approximately sixty-five miles per hour. Prior to the accident, Mr. David Shortt moved his vehicle from behind plaintiffs', into the left-hand lane. According to Mr. David Shortt, the vehicle he was operating was approximately one-hundred feet behind, and to the left of plaintiffs' vehicle when the accident occurred. Mr. Randy Shortt estimated the distance between the two vehicles at the time the accident occurred to have been sixty to eighty feet. Both Mr. David Shortt and Mr. Randy Shortt testified that the object in the road which caused the accident was a piece of concrete which had been partially protruding from the road surface from which it had become dislodged. Mr. Sturgill described the object as being good-sized and resembling a dead animal. Having both personally examined the pothole after the accident, Mr. David Shortt described the pothole to have been at least a foot in diameter, and more than a foot in depth, while Mr. Randy Shortt estimated it to have been several feet in circumference and six to twelve (6-12) inches deep.
8. Mr. Darrell Thompson, a resident of Surry County, also testified at the hearing regarding the accident as an eyewitness, and regarding the condition of Interstate 77. His testimony further corroborates that of plaintiff Harrison Kline. Mr. Thompson regularly traveled on Interstate 77 in Surry County in the vicinity of the accident and testified that the highway surface was in bad condition due to the broken concrete pavement, and potholes. According to Mr. Thompson, whose testimony is accepted as credible by the Full Commission, these poor road surface conditions had existed in the vicinity of plaintiffs' accident for several years prior to its occurrence. Additionally, on March 21, 1998, Mr. Thompson was traveling behind plaintiffs' vehicle, and testified that plaintiffs' vehicle was traveling approximately sixty-five to sixty-seven miles per hour, and that plaintiff Harrison Kline was driving in a normal manner. Finally, Mr. Thompson testified that plaintiff Harrison Kline was unable to change into the left-hand lane because of the presence in that lane of the vehicle in which the Shortts and Mr. Sturgill were traveling.
9. Following the accident, plaintiffs were transported by ambulance to Hugh Chatham Memorial Hospital in Elkin. The parties have stipulated that the amount of medical expenses incurred by plaintiffs as the result of this incident was $144,874.21.
10. Plaintiff Evelyn Kline was later airlifted to North Carolina Baptist Hospital, where she remained in a coma until April 3, 1998. As a result of the accident of March 21, 1998, plaintiff Evelyn Kline sustained a closed head injury with an intracerebral hemorrhage. As a consequence, in addition to being in a coma for several weeks, plaintiff Evelyn Kline has sustained substantial memory loss, cognitive deficits, Horner's Syndrome, and the loss of right field of vision in both eyes. Additionally, she sustained a rotator cuff injury to her right shoulder, which required surgery, and a complete brachial plexus injury of the left shoulder, which has left that limb flaccid and unusable. On April 8, 1998, plaintiff Evelyn Kline was transferred by air ambulance to The Ohio State University Medical Center where she remained until April 29, 1998. Prior to the accident, plaintiff Evelyn Kline was gainfully employed as a gastroenterological medical technician; however, she has not been employed since the accident, and will be unable to resume her employment. Plaintiff Evelyn Kline has also lost the ability to perform many household chores and services. Plaintiff Evelyn Kline's past lost wages total $90,000, and her future lost wages are approximately $218,100. The parties have stipulated that the total amount of damages sustained by plaintiff Evelyn Kline exceeds $500,000.
11. As the result of the accident of March 21, 1998, plaintiff Harrison Kline experienced pain and suffering as a result of a concussion, his chest hitting the steering wheel, weakness in his upper right extremity, bruising of his face, and chest contusions. While at Hugh Chatham Memorial Hospital, plaintiff Harrison Kline received x-rays of his chest, cervical spine and pelvis, as well as CT scans of his head, abdomen, and cervical spine. It was specifically noted on physical exam that Mr. Kline did not have full use of his right hand, and there was a question as to whether he may have injured his brachial plexus, or have cranial damage. Upon his discharge from Hugh Chatham Memorial Hospital, Mr. Kline immediately traveled to Baptist Hospital to be with his wife, who was still in a coma. The parties stipulated that plaintiff Harrison Kline missed one-hundred and eighteen (118) days of work as the result of the March 21, 1998 accident. During such period of time, plaintiff Harrison Kline would have worked 7.5 hours per day at an hourly wage of $7.50, making his lost income $6,637.50. Moreover, as a result of the serious, permanent, and debilitating injuries to his wife, Mr. Kline has suffered a loss of her society, companionship, and consortium.
12. In its counter claim, defendant contends that the accident was due in part to the negligence of plaintiff Harrison Kline. Specifically, defendant contends that plaintiff Harrison Kline was negligent by failing to slow down when he re-entered a stretch of rough concrete pavement at milepost 87, by failing to keep what it contends would be a proper lookout, and by failing to slow down to avoid a visible object in the road. At the deputy commissioner hearing, plaintiff Harrison Kline's Motion for a Directed Verdict on Defendant's Counter Claim was denied, the deputy commissioner noting that the requisite scintilla of evidence supporting the counter claim had been presented.
13. Having now reviewed the entire record of evidence, the Full Commission finds no additional evidence supporting the counter claim. To the contrary, the overwhelming credible evidence of record establishes that plaintiff Harrison Kline was operating his vehicle in a normal and safe manner. The evidence also establishes that plaintiff Harrison Kline acted reasonably when confronted with the dislodged piece of concrete in his lane of travel. Should plaintiff Harrison Kline had run his car off into the right hand shoulder, as was suggested as a potentially reasonable reaction by defendant, he then faced the real possibility of not being able to stop his vehicle before running over the bank and into the Mitchell River.
14. The Full Commission finds that there were no actions or inactions on the part of plaintiff Harrison Kline that constituted contributory negligence in relation to the accident occurring on March 21, 1998.
15. North Carolina State Highway Patrol Trooper D.C. Frick investigated plaintiffs' accident, took measurements, and interviewed witnesses. Trooper Frick's accident report is part of the record as Plaintiffs' Exhibit (36). At the deputy commissioner hearing, Trooper Frick testified as to the condition of the surface of Interstate 77 in Surry County in the specific and general vicinity of the accident. According to Trooper Frick's testimony, the section of highway where the accident occurred was deteriorated, with numerous potholes (depressions in the highway caused by broken pavement), and punch-outs (extrusions in the concrete surface of the highway). Based upon his years of professional and personal experience, Trooper Frick was of the opinion that the condition of Interstate 77 in Surry County, and specifically in the immediate vicinity of the accident, was dangerous for motorists. As of the time of the deputy commissioner hearing, Trooper Frick had patrolled the highway at issue for more than twenty years, and had investigated numerous accidents which were caused by, or related to, potholes and punch-outs. Additionally, Trooper Frick testified that although he regularly drove along this stretch of Interstate 77 in his patrol car, he avoided it when driving his personal vehicle due to damage his personal vehicle had sustained from the condition of the road surface. Prior to March 21, 1998, Trooper Frick had notified defendant on multiple occasions regarding these accidents through his submitted written reports, and by oral reports. As for warnings of the road condition, Trooper Frick testified that no warnings had been issued with respect to the poor and unsafe condition of the highway prior to the time of the accident.
16. North Carolina State Highway Patrol Trooper D.N. Kiger also testified regarding the condition of Interstate 77 in Surry County preceding, and at the time of incident in question. As with Trooper Frick, as of the time of the deputy commissioner hearing, Trooper Kiger had patrolled the highway at issue for more than twenty (20) years, and testified that numerous potholes and punch-outs were present in the general and specific area of the accident. Additionally, based upon his years of experience, Trooper Kiger opined that the condition of Interstate 77 in Surry County was dangerous for motorists. As for warnings of the road condition, Trooper Kiger testified that no warnings had been issued with respect to the poor and unsafe condition of the highway prior to the time of the accident.
17. Mr. Roger Mark Freeman, currently defendant's Resident Engineer, was defendant's Maintenance Engineer for Surry County at the time of the accident. Mr. Freeman had worked for defendant as a Maintenance Engineer for approximately ten years, and in that capacity he was responsible for routine maintenance of Interstate 77 in Surry County. While working as a Maintenance Engineer, Mr. Freeman reported to Mr. Wayne O. Atkins, who was defendant's District Engineer. As a District Engineer from June 1985 to August 1999, Mr. Atkins was responsible for roads, including Interstate 77, in Alleghany, Yadkin, and Surry counties, and reported to Mr. Wade E. Hoke, defendant's Division Engineer. Mr. Hoke worked as defendant's Division Engineer from 1984 until his retirement in 1999. In that capacity, Mr. Hoke was responsible for all transportation matters in seven (7) counties, including Surry County.
18. The road surface of Interstate 77 in Surry County that had not been permanently replaced with a covering of asphalt, was composed of eight (8) inch thick concrete, continuously reinforced with steel rebar. When completed in 1977, the highway was state of the art, and was designed to develop cracking rather than having expansion joints. According to the testimony of Mr. Freeman, by the 1990s, Interstate 77 in Surry County required frequent repairs for potholes and punch-outs. Mr. Freeman's testimony on this issue was corroborated by the testimony of Mr. Atkins, and by Mr. Hoke. Both Mr. Atkins and Mr. Hoke also confirmed that the stretch of Interstate 77 in Surry County that had not been permanently replaced with an asphalt covering had surpassed its approximate twenty year design life prior to the time of plaintiffs' accident.
19. Prior to and at the time of the plaintiffs' accident on March 21, 1998, defendant had numerous instances of direct notice of problems associated with the road surface along Interstate 77 in Surry County that posed a risk of harm to the traveling public. This notice included knowledge of the road surface conditions in the immediate vicinity of the site of plaintiffs' accident. The evidence of record supports a finding that these conditions existed longer than ten years prior to plaintiffs' accident, and had increased in severity over time during the period approaching March 21, 1998. Defendant had this notice through investigative reports from law enforcement officials, citizen complaints, and through the knowledge of its employees, including Mr. Hoke, Mr. Atkins, Mr. Freeman, and Mr. Tony East, a Repair Supervisor who also testified at the hearing. This notice and knowledge by defendant's employees was gained through the inspection of the Interstate 77 as part of their regularly assigned duties and responsibilities.
20. Notice of the risks of danger of Interstate 77 in Surry County posed to the traveling public was provided to defendant through reports of at least at least twenty-five motor vehicle accidents during the five years prior to March 21, 1998, with sixteen occurring during the two year period immediately preceding plaintiffs' accident. A compilation of these accidents is part of the record, marked as Plaintiffs' Exhibit (53). These accidents occurred under the same or similar circumstances as plaintiffs' accident, involving potholes and punch-outs in the road surface.
21. Although defendant may contest the characterization of the road surface conditions of Interstate 77 in Surry County, its actions demonstrate that it was aware of, and had notice of these unsafe conditions. Through the testimony of its employees at the deputy commissioner hearing, it was shown that defendant had instituted an extensive program of temporary and emergency repairs of potholes and punch-outs along the concrete road surface portions of Interstate 77 in Surry County. The number of such repairs regularly exceeded several hundred each month. Where these types of repairs were made differed from sections of the concrete replaced and resurfaced with a permanent asphalt covering. According to the testimony of Mr. East, defendant's employee most directly involved with maintenance of Interstate 77, more than 1,000 pothole or punch-out repairs occurred per month during the three years preceding March 21, 1998, for a total of more than 12,000 potholes per year. These types of repairs to potholes and punch-outs usually involved the use of cold mix asphalt, a temporary repair designed to last only two to five days.
22. Prior to March 21, 1998, defendant's employees had observed numerous cracks, potholes and punch-outs in the surface of the roadway along Interstate 77 in Surry County. Additionally, pieces of loose and dislodged concrete pavement containing steel rebar from the road surface had also been observed by defendant's employees in the immediate vicinity of the site of plaintiffs' accident. The existence of cracks and corroded steel rebar are conditions which operate in conjunction with each other to produce the potholes and concrete punch-outs. The credible evidence of record establishes that by and through its employees, defendant had notice that the type of pothole or concrete punch-out, such as that involved in plaintiffs' accident, could occur at any moment. Only three days prior to March 21, 1998, defendant's employees had filled a pothole in the same location as the broken pavement which caused plaintiffs' accident.
23. On November 6, 1997, Mr. Hoke, acting in his capacity as defendant's District Engineer, wrote a correspondence to C.A. Gardner, Jr., P.E., defendant's Deputy Chief Engineer. This correspondence is part of the record as Plaintiffs' Exhibit (89). In this correspondence, Mr. Hoke opined that Interstate 77 in Surry County constituted the worst piece of Interstate pavement in North Carolina and in surrounding states.
24. Based upon the condition of the road surface, and the rate of repairs made to Interstate 77 in Surry County, defendant had notice of the continuing deterioration of the road surface that posed a high risk of harm to the traveling public. Additionally, due to the type of repairs made, and the possibility that asphalt patches could dislodge at any moment, and were designed to last no more than five days, defendant also had notice that the dangerous condition of the road surface existed even after these temporary repairs were made. Based upon the evidence of record, the risk of harm to the traveling public along Interstate 77 in Surry County was unreasonable.
25. Regarding its efforts to protect the traveling public from this unreasonable risk of harm, defendant contends that it took every step possible, including the extensive temporary patching and repair program. In his testimony, and through other evidence, it is clear that despite defendant's contention, Mr. Hoke was aware that the only truly remedial measure that could be taken was to replace the concrete road surface with a permanent asphalt covering. Certain sections of Interstate 77 in Surry County had already been resurfaced in this manner prior to March 21, 1998. The reason, defendant contends, that the entire unsafe concrete highway had not been resurfaced was due to what it termed as competing needs for repairs on other roadways.
26. Defendant's contentions regarding the remaining unsafe concrete portions of Interstate 77 in Surry County do not insulate it from the reality that the only reasonable action was to permanently replace and resurface the roadway with asphalt, or close the affected sections of the interstate until conditions were safe for travel. Because it failed to do so, by and through its employees, defendant breached its duty to maintain Interstate 77 in Surry County in a reasonably safe condition, and was therefore, negligent.
27. At the time of plaintiffs' accident on March 21, 1998, there were no signs displayed by defendant along Interstate 77 in Surry County that warned of, or otherwise alerted motorists to the hazardous condition of the roadway, or of the existence of broken pavement. Defendant had warning signs available in the form of diamond shaped temporary warning signs and portable electronic roadside warning signs. Examples of these warning signs are part of the record as Plaintiffs' Exhibit (99). Mr. Freeman had the authority to request the placement of appropriate warning signs along Interstate 77. Mr. Hoke and Mr. Atkins not only could request such signs, but had the authority and responsibility to place warning signs as needed along Interstate 77 in Surry County.
28. Regarding the use of warning signs, defendant attempted to shield itself from liability by producing evidence that the over use of road signs, warning or otherwise, possibly may result in the traveling public not paying proper attention to any of the signs. At the deputy commissioner hearing, Mr. Ernest F. Mallard testified as an expert witness, having formerly been employed by defendant for twenty-two years, and with considerable experience as a Traffic Engineer. Prior to acting as a Traffic Engineer, Mr. Mallard also worked as State Signals and Geometrics Engineer and as a State Railway Crossing Signals Engineer. Mr. Mallard testified that mobile warning signs, along with fixed temporary roadside warning signs, should have been used by defendant to advise motorists of the dangerous conditions along Interstate 77 in Surry County, including the section in which plaintiffs' accident occurred.
29. With the presence of an unreasonable risk of harm regarding the roadway surface of Interstate 77 in Surry County, defendant had a duty to warn the traveling public of this danger, or close the affected sections of the interstate until conditions were safe for travel. Because it failed to do so, by and through its employees, defendant breached its duty to warn motorists of, or adequately protect them from a known hazard along Interstate 77 in Surry County, and was therefore, negligent.
30. Defendant's negligence in failing to properly maintain Interstate 77 in Surry County in a reasonably safe condition, and by failing to warn of, or protect the traveling public from a know unreasonable risk of harm, was the proximate cause of plaintiffs' accident occurring on March 21, 1998, and of their related damages.
31. As noted, the parties stipulated that plaintiff Evelyn Kline's damages exceeded $500,000.00. Regarding plaintiff Harrison Kline damages, he sustained $6,637.50 in damages from lost wages, $7,577.91 in medical expenses, along with pain and suffering, and the loss of society, companionship, and consortium with his wife. Plaintiff Harrison Kline's total damages are found to be $115,000.00.
 ***********
Based upon the findings of fact, the Full Commission concludes as follows:
 CONCLUSIONS OF LAW
1. By and through the actions and inactions of its employees, defendant breached its duty to maintain Interstate 77 in Surry County in a reasonably safe condition, and was therefore, negligent. G.S. §143-291, et seq.
2. By and through the actions and inactions of its employees, defendant breached its duty to warn motorists of a known hazard along Interstate 77 in Surry County, or close the affected sections of the interstate until conditions were safe for travel, and was therefore, negligent. Id.
3. There were no actions, or inactions on the part of plaintiff Harrison Kline that constituted contributory negligence in relation to the accident occurring on March 21, 1998. Id.
4. Defendant's negligence in failing to properly maintain Interstate 77 in Surry County in a reasonably safe condition, and by failing to warn of, or protect the traveling public from a known unreasonable risk of harm, was the proximate cause of plaintiffs' accident occurring on March 21, 1998, and of their related damages. G.S. § 143-291, et seq.
5. As the result of defendant's negligence, plaintiff Evelyn Kline sustained damages for which she is entitled to be paid by defendant in the amount of $500,000.00, and plaintiff Harrison Kline sustained damages for which he is entitled to be paid by defendant in the amount of $115,000.00. Id.
 ***********
Based on the foregoing findings of fact and conclusions of law, the Full Commission AFFIRMS the holding of the Deputy Commissioner and enters the following:
 AWARD
1. Defendant shall pay the sum of $500,000.00 to plaintiff claimant Evelyn Kline as compensation for the damages she sustained as the proximate result of its negligence.
2. Defendant shall pay the sum of $115,000.00 to plaintiff claimant Harrison Kline the damages sustained as the proximate result of its negligence.
3. Defendant North Carolina Department of Transportation shall pay the costs due the Commission.
It is further ORDERED that plaintiff's motion dated December 12, 2003, requesting plaintiffs' costs be taxed against defendant pursuant to N.C.G.S. § 143-291.1 is hereby DENIED.
This the ___ day of June 2003.
 S/____________ BUCK LATTIMORE CHAIRMAN
CONCURRING:
 S/_______________ CHRISTOPHER SCOTT COMMISSIONER
DISSENTING:
 S/___________________ BERNADINE S. BALLANCE COMMISSIONER